UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| GERALD KRUMREI,<br><br>    Plaintiff,<br><br>v.<br><br>DAKTRONICS, INC.,<br><br>    Defendant. | Case No. _____18-4148-RAL_____<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff Gerald Krumrei ("Plaintiff"), by and through his attorneys, Goosmann Law Firm, P.L.C., and for his Complaint against Defendant Daktronics, Inc. ("Defendant" or "Daktronics"), states and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff was first employed by Defendant from 2006 to 2010. Plaintiff was then re-hired in 2013 and was employed by Defendant until July 2018.

2. Plaintiff brings this action under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112, 12117, as amended, as well as under the Family and Medical Leave Act, 29 U.S.C. § 2617. As a result, this Court has subject matter jurisdiction of this dispute under 28 U.S.C. § 1331.

3. Under 28 U.S.C. § 1367, this Court has pendant jurisdiction of the state-law claim asserted herein.

4. Under 28 U.S.C. § 1391, venue is proper in the District of South Dakota because a substantial part of the events or omissions giving rise to the claims occurred in the District of South Dakota.

1

## PARTIES

5. Plaintiff was, at all times material hereto, an employee of Defendant and a resident of Minnehaha County, South Dakota.

6. Daktronics is a South Dakota Corporation with principal corporate offices in Brookings, South Dakota.

## BACKGROUND

7. Plaintiff is a sixty-year-old man, who was first employed with Defendant in 2006 in the electronic assembly department.

8. Plaintiff remained with Defendant until 2010, when he secured a job with Raven Industries ("Raven") in Sioux Falls, South Dakota. Plaintiff remained with Raven for three years before returning to work for Defendant. When Plaintiff returned, Plaintiff worked in the metal fabrication department for one year and then moved to the electronic assembly department.

9. In December 2017, Plaintiff began experiencing trouble breathing. He was eventually diagnosed with a blood clot in his lung and spent four nights in the hospital from March 9, 2018, to March 13, 2018.

10. After Plaintiff's time in the hospital, he spent some time off-work on short-term disability leave. He returned to work in the electronic assembly department on May 21, 2018.

11. On or about June 14, 2018, Plaintiff underwent an echocardiogram, which determined that Plaintiff had substantially decreased heart activity. It was determined that Plaintiff required surgery for placement of a pacemaker.

12. Due to Plaintiff's condition, Plaintiff would no longer be able to work in the electronic assembly department.

13. On or about Monday, June 18, 2018, Plaintiff informed Defendant that Plaintiff's was to undergo surgery on Friday, June 22, 2018, which included the placement of a pacemaker. Plaintiff informed Defendant that Plaintiff would no longer be able to work in the electronic assembly department, due to his condition.

14. Ms. Terri Dix, a human resources representative for Defendant, responded to Plaintiff's statement by informing Plaintiff that there were "no openings in customer service." Plaintiff had not indicated that he was looking to transfer to the customer service department; nor did Plaintiff ask about available positions in that department.

15. Ms. Dix proposed that Plaintiff could be transferred to one of three possible open positions: final assembler, metal fabricator, or inventory clerk.

16. The final assembler position was quickly filled by another individual.

17. The metal fabricator position was a night-shift position and would not have satisfied Plaintiff's temporary lifting restrictions following his surgery.

18. The inventory clerk position had the same hours as Plaintiff's position in the electronic assembly department, and a human resources representative for Defendant suggested that it was the "best fit" for Plaintiff.

19. On or about Friday, June 22, 2018, Plaintiff underwent surgery and a pacemaker was implanted.

20. Plaintiff had scheduled paid time-off on Monday, June 25, 2018.

21. On or about Monday, June 25, 2018, Defendant directed Plaintiff not to report to work on Tuesday, June 26, 2018; Wednesday, June 27, 2018; or Thursday, June 28, 2018.

22. Although Plaintiff had planned to return to work on Tuesday, June 26, 2018, and although Defendant ordered Plaintiff not to come to work on the three above-mentioned days, Defendant indicated that it would count those three days toward Plaintiff's FMLA leave.

23. Defendant directed Plaintiff to report for an interview for the inventory clerk position on Thursday, June 28, 2018. When Plaintiff arrived that day, he was given a tour of the inventory area. The tour did not at all include the electronic assembly department or electronic assembly inventory room. After the tour, Plaintiff was asked whether he was interested in the inventory clerk position and whether he believed that he could perform those duties. He answered both questions in the affirmative. Defendant conducted the meeting as if it were an interview but indicated that the meeting was not an interview.

24. Defendant directed Plaintiff to return to work on Monday, July 2, 2018.

25. Plaintiff reported to work on Monday, July 2, 2018, and worked in the fuel-light department on Monday, July 2, 2018, and Tuesday, July 3, 2018.

26. On Tuesday, July 3, 2018, Ms. Dix indicated that Plaintiff could expect a call regarding the inventory clerk position on either July 5 or 6, 2018.

27. On Friday, July 6, 2018, Ms. Dix contacted Plaintiff by telephone regarding the inventory clerk position. Defendant informed Plaintiff that the inventory clerk position required multiple fifteen-minute daily trips into the electronic assembly department, as well as periodic trips into the electronic assembly inventory room.

28. Upon information and belief, individuals who previously held the inventory clerk position did not enter the electronic assembly department or the electronic assembly inventory room.

29. During the Friday, July 6, 2018 telephone call, Defendant discussed Plaintiff likely receiving a severance package.

30. On Monday, July 9, 2018, Plaintiff informed Defendant that Plaintiff would review the terms of the proposed severance package (the "Agreement"). After reviewing the Agreement, Plaintiff signed that he had received it, but he did not accept its terms at that time. The Agreement provided Plaintiff three weeks to consider whether to accept the Agreement's terms.

31. On Monday, July 9, 2018, while Plaintiff was considering whether to accept the Agreement, Defendant terminated Plaintiff's employment.

32. On Wednesday, July 11, 2018, Plaintiff requested a reasonable accommodation from Defendant for the inventory clerk position.

33. On the morning of Monday, July 23, 2018, Defendant announced to its staff that an individual had been hired to fill the inventory clerk position.

34. On the morning of Monday, July 23, 2018, Ms. Dix contacted Defendant to discuss his request for a reasonable accommodation. During that conversation, Plaintiff asked whether it would be possible for other inventory clerks to perform the visits to the electronic assembly department and electronic assembly inventory room. At that time, Ms. Dix offered other reasons why Plaintiff could not perform the inventory clerk duties.

35. The day after their phone conversation, Plaintiff received a certified letter officially denying Plaintiff's request for accommodation. A true and correct copy of this letter is attached hereto as **Exhibit 1.** In this letter, Defendant claimed it was a job requirement for inventory clerks to spend up to seventy percent (70%) of a ten-hour shift in the electronic assembly department. This amount of time was far greater than what Defendant had

previously claimed, and such a breadth of time was not listed as a requirement in Defendant's description of the job.

36. On or about July 30, 2018, Plaintiff filed a claim for disability discrimination with the South Dakota Department of Labor, which was received by the Department on July 30, 2018. A true and correct copy of Plaintiff's Charge of Discrimination is attached hereto as **Exhibit 2**.

37. On or about August 9, 2018, the EEOC issued Plaintiff a Dismissal and Notice of Rights. A true and correct copy of the Dismissal and Notice of Rights is attached hereto as **Exhibit 3**.

## COUNT I
### *Violation of the ADA*
### *(Disability Discrimination)*

38. Plaintiff incorporates Paragraphs 1 through 37, inclusive, of this Complaint as if set forth fully herein.

39. Defendant was an "employer" at all times material herein within the meaning of the ADA.

40. Defendant is engaged in an "industry affecting commerce" within the meaning of the ADA.

41. Plaintiff was an individual with a "disability," as that term is defined by the ADA.

42. Plaintiff's disability substantially limits his major life activities.

43. At all relevant times, Plaintiff was a "qualified individual with a disability" within the meaning of the ADA, as he is an individual with a disability who, with or without

reasonable accommodations, could perform the essential functions of various positions for Defendant, including, but not necessarily limited to, the inventory clerk position.

44. Defendant knew of Plaintiff's disability.

45. Plaintiff suffered adverse employment actions as a result of his disability, as described in Paragraphs 1 through 37, inclusive, including, but not limited to, the termination of his employment.

46. Defendant's proffered reasons for terminating Plaintiff's employment were pretextual.

47. Plaintiff's disability was an illegal factor under the law in Defendant's actions toward Plaintiff as described in Paragraphs 1 through 37, inclusive, and this Count, including, but not limited to, the termination of his employment, and Defendant's actions therefore constitute an unlawful employment practice and pattern of discrimination prohibited by the ADA.

48. Defendant's discriminatory employment practices based on Plaintiff's disability have caused him to suffer damages, including, but not expressly limited to, a loss in back pay and front pay, in an amount to be proven at trial.

49. The unlawful employment practices of which Plaintiff complains were intentional and/or were done with malice or reckless indifference to Plaintiff's federally protected rights.

50. Because Defendant's discriminatory employment practices were intentional or were done with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

51. Under Title V of the ADA, 42 U.S.C. § 12205, Plaintiff is entitled to his reasonable attorneys' fees, litigation expenses, and costs incurred in this action.

## COUNT II
### *Violation of the ADA*
### *(Failure to Accommodate Disability)*

52. Plaintiff incorporates Paragraphs 1 through 51, inclusive, of this Complaint as if set forth fully herein.

53. Plaintiff's disability could have been reasonably accommodated.

54. Defendant failed to reasonably accommodate Plaintiff's disability and failed to engage in an interactive process with Plaintiff to identify available reasonable accommodations before termination.

55. Defendant's discriminatory conduct and failure to engage in an interactive process with Plaintiff to identify available reasonable accommodations resulted in the termination of Plaintiff's employment.

56. Defendant's proffered reasons for terminating Plaintiff's employment were pretextual.

57. Defendant's actions toward Plaintiff constitute an unlawful employment practice and pattern of discrimination prohibited by the ADA.

58. Defendant's discriminatory employment practices based on Plaintiff's disability have caused him to suffer damages, including, but not expressly limited to, a loss in back pay and front pay and the value in lost benefits, in an amount to be proven at trial.

59. The unlawful employment practices of which Plaintiff complains were intentional and/or were done with malice or reckless indifference to Plaintiff's federally protected rights.

60. Because Defendant's unlawful employment practices were intentional or were done with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

61. Under the ADA, Plaintiff is entitled to his reasonable attorney's fees, litigation expenses, and costs incurred in this action.

## COUNT III
### *Violation of the South Dakota Human Rights Act*
### *(Disability Discrimination)*

62. Plaintiff incorporates Paragraphs 1 through 61, inclusive, of this Complaint as if set forth fully herein.

63. Defendant was, at all times relevant hereto, an "employer" within the meaning of the South Dakota Human Rights Act.

64. Plaintiff was an individual with a "disability," within the meaning of the South Dakota Human Rights Act.

65. Plaintiff's disability substantially limits his major life activities.

66. At all relevant times, Plaintiff was a "qualified individual with a disability" within the meaning of the South Dakota Human Rights Act, as he is an individual with a disability who, with or without reasonable accommodations, could perform the essential functions of various positions for Defendant, including, but not necessarily limited to, the inventory clerk position.

67. Defendant knew of Plaintiff's disability.

68. Plaintiff suffered adverse employment actions as a result of his disability, as described in Paragraphs 1 through 38, inclusive, including, but not limited to, the termination of his employment.

9

69. Defendant's proffered reasons for terminating Plaintiff's employment were pretextual.

70. Plaintiff's disability was an illegal factor under the law in Defendant's actions toward Plaintiff as described in Paragraphs 1 through 37, inclusive, and this Count, including, but not limited to, the termination of his employment, and Defendant's actions therefore constitute an unlawful employment practice and pattern of discrimination prohibited by the South Dakota Human Rights.

71. Defendant's discrimination against Plaintiff on the basis of his disability has caused Plaintiff to suffer damages in an amount to be proven at trial.

72. Defendant's discrimination against Plaintiff on the basis of his disability was intentional or done with malice and reckless indifference to Plaintiff's protected rights.

73. Because Defendant's retaliatory employment practices were intentional or were done with malice or reckless indifference to Plaintiff's protected rights, Plaintiff is entitled to recover punitive damages.

74. Under the South Dakota Human Rights Act, Plaintiff is entitled to his reasonable attorney's fees, litigation expenses, and costs incurred in this action.

## COUNT V
### *Violation of the Family and Medical Leave Act*

75. Plaintiff incorporates Paragraphs 1 through 74, inclusive, of this Complaint as if set forth fully herein.

76. Plaintiff was, at all times relevant hereto, an "eligible employee" under the FMLA.

77. Defendant was, at all times relevant hereto, an "employer" under the FMLA.

78. Upon information and belief, Defendant's decision to terminate Plaintiff was causally linked to Plaintiff's FMLA leave, which he had taken around the time of his termination.

79. The unlawful employment practices of which Plaintiffs complains were intentional and/or were done with malice or reckless indifference to Plaintiff's federally protected rights.

80. Because Defendant's unlawful employment practices were intentional or were done with malice or reckless indifference to Plaintiff's federally protected rights, Plaintiff is entitled to recover punitive damages.

81. Under the FMLA, Plaintiff is entitled to his reasonable attorneys' fees, litigation expenses, and costs incurred in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Gerald Krumrei prays for relief as follows:

A. For Plaintiff's total damages, including, but expressly not limited to, back pay, in an amount to be determined at trial;

B. For front pay in an amount to be determined at trial;

C. For the value in lost benefits in an amount to be determined at trial;

D. For any other of Plaintiff's compensatory damages in an amount to be determined at trial;

E. For punitive damages in an amount to be determined at trial;

F. For attorneys' fees, costs, and disbursements incurred herein; and

G. For such other and further relief as the Court deems just and equitable under the circumstances.

## JURY DEMAND

Plaintiff hereby demands a jury trial on any and issues triable by a jury.

Dated this 2nd day of November, 2018.

GOOSMANN LAW FIRM, P.L.C.

By: *Meghann Joyce*
Meghann M. Joyce
Tyler J. Coverdale
5010 S. Minnesota Ave., Suite 100
Sioux Falls, SD 57108
Phone: (605) 371-2000
JoyceM@GoosmannLaw.com
CoverdaleT@GoosmannLaw.com